1

2

3

4

5

6                           **UNITED STATES DISTRICT COURT**

7                                 **DISTRICT OF NEVADA**

8    GEORGE M. BRASS,                              Case No.: 2:13-cv-02020-GMN-VCF

9           Petitioner                                            **Order**

10   v.

11   BRIAN WILLIAMS, SR., et al.,

12          Respondents.

13

14          Petitioner George M. Brass filed a petition for writ of habeas corpus under 28 U.S.C. §

15   2254. This matter is before the Court for adjudication of the merits of the remaining grounds in

16   the petition. For the reasons discussed below, this court denies the petition, denies a certificate of

17   appealability, and directs the Clerk of the Court to enter judgment accordingly.

18                                        **Background**

19          Brass was charged with crimes related to events that occurred in Clark County, Nevada

20   on September 15, 2006, and September 22, 2006. ECF No. 32-1. On September 15, 2006,

21   Graciela Saavedra de Cerda was sitting in a van with her son at a business complex in Las

22   Vegas, Nevada. ECF No. 33-2 at 43. Saavedra de Cerda testified that there were several Mexican

23   men standing outside of the business complex talking. *Id.* at 51. Saavedra de Cerda noticed three

young African American men "walking from a path that was coming from some apartments nearby" towards the group of Mexican men, and a few minutes later, she heard six gunshots. *Id.* at 44, 50.

One of the Mexican men, Martin Candelos, testified that he was standing outside of a counseling meeting with his friend, Antonio Perez-Martinez, and a new acquittance, Mario Mendez. *Id.* at 61-62. They were approached by three African American men who pointed two guns at them and demanded money. *Id.* at 67-68. Candelos managed to get away after struggling with one of the African American men and was shot at as he was running away. *Id.* at 71-73. Perez-Martinez was shot and killed in the confrontation, and Mendez managed to hide behind a palm tree. *Id.* at 90, 95.

One week later, on September 22, 2006, Victor Manuel Abris, Leodelgado Leon Carlos, Lovardo Ledesma Nunez, Cesar Carrizales, and Saul Nunez-Suastegui were outside of the Village Palm Apartments in Las Vegas, Nevada. ECF No. 33-2 at 213-215. The five men were standing around talking when they heard "the cocking of a weapon or something." *Id.* at 217. Thereafter, four African American men, each with a handgun and wearing a face-covering scarf, approached and demanded money. *Id.* at 219-220. Even though some of the five men attempted to give the African American men their wallets or jewelry, all four African American men started firing their weapons. *Id.* at 222, 233. Carrizales was shot in the head and survived; however, Nunez-Suastegui suffered a fatal gunshot wound. *Id.* at 234-35; ECF No. 33-3 at 12-13.

Regarding the September 15, 2006 crime scene, Brass's fingerprints were found on a gate near the scene, and the casings and bullets recovered from the scene and the bullet recovered from the autopsy of Perez-Martinez were linked to a .9-millimeter handgun belonging to one of Brass's co-defendants, Eugene Nunnery. ECF No. 33-2 at 141-42, 151-54, 189; ECF No. 33-3 at

109-112. Regarding the September 22, 2006 events, it was determined that Nunez-Suastegui was shot by the same .9-millimeter handgun belonging to Nunnery. ECF No. 33-3 at 113-116. There were also casings found at the scene linked to a .45-caliber gun and bullets linked to a medium caliber gun. *Id.* at 113-114, 118. Brass's cell phone was recovered near the scene. *Id.* at 96, 149-52, 167. During a police interview, Brass admitted that he was with Nunnery on September 22, 2006, but Brass alleged that Nunnery got into an altercation with one of the victims and starting shooting after Brass had already started to walk away. ECF No. 33-3 at 182-83, 188. Later, during a search of Brass's parents' residence, a revolver was located. ECF No. 33-4 at 27-28.

Following a jury trial, on October 20, 2009, Brass was found guilty of the charges related to the September 22, 2006 incident: one count of murder with the use of a deadly weapon, two counts of attempted murder with the use of a deadly weapon, one count of conspiracy to commit robbery, one count of robbery with the use of a deadly weapon, and two counts of attempted robbery with the use of a deadly weapon. ECF No. 34-1. Brass was found not guilty of the September 15, 2006 events. *Id.* The state district court sentenced Brass to two consecutive terms of life with the possibility of parole. ECF No. 34-6. Brass appealed, and the Nevada Supreme Court affirmed. ECF No. 36-1. Remittitur issued on January 4, 2011. ECF No. 36-2.

Brass filed a pro se state habeas petition and a counseled, supplemental memorandum in support of his petition on April 5, 2011 and January 9, 2012, respectively. ECF Nos. 36-4, 38-3. An evidentiary hearing was held on June 18, 2012, and on July 30, 2012, the state district court denied Brass's state habeas petition. ECF Nos. 39, 39-1. Brass appealed, and the Nevada Supreme Court affirmed. ECF No. 40-2. Remittitur issued on October 18, 2013. ECF No. 40-3.

Brass filed a pro se federal habeas petition and a counseled, first amended petition on November 22, 2013 and December 17, 2014, respectively. ECF Nos. 7, 24. On January 9, 2015,

Brass moved for a stay and abeyance of his federal habeas action in order to exhaust his remedies in state district court. ECF No. 43. The Respondents moved to dismiss Brass's first amended petition and opposed his motion for a stay and abeyance. ECF Nos. 47, 48.

On September 18, 2015, Brass filed a second state habeas petition. ECF No. 73-1. The state district court denied the petition, and the Nevada Court of Appeals affirmed on October 18, 2016. ECF Nos. 73-3, 73-5.

On September 7, 2017, this court denied Brass's motion for stay and abeyance as moot and denied the Respondents' motion to dismiss without prejudice. ECF No. 65. The Respondents renewed their motion to dismiss Brass's first amended federal habeas petition on February 2, 2018. ECF No. 72. This court granted the renewed motion to dismiss in part. ECF No. 84. Specifically, this court dismissed Grounds Four and Nine. *Id.* at 10. The Respondents answered the remaining claims on August 23, 2018. ECF No. 89. Brass replied on November 5, 2018. ECF No. 98.

In his remaining ground for relief, Brass alleges the following violations of his federal constitutional rights:

| | | |
|---|---|---|
| 1. | The state district court impermissibly admitted the revolver. | |
| 2. | Joinder of the two September 2006 instances for trial was fundamentally unfair. | |
| 3. | The state district court improperly allowed the prior testimony of two witnesses. | |
| 5. | The state district court impermissibly denied his theory of defense instruction and allowed other instructions that contradicted the mere presence instruction given. | |
| 6a. | His trial counsel failed to investigate or hire experts related to the revolver, the bullet fragment, or the gun powder residue. | |
| 6b. | His trial counsel refused to allow him to testify. | |
| 6c. | His trial counsel failed to object to prosecutorial misconduct. | |
| 6d. | His trial counsel failed to object to the unlawfully composed jury. | |
| 6e. | His trial counsel failed to object to improper jury instructions. | |
| 7a. | His appellate counsel failed to federalize claims. | |

7b.   His appellate counsel failed to raise ineffective-assistance-of-counsel claims.

7c.   His appellate counsel failed to argue error in granting the motion to withdraw his guilty plea.

8.    His trial counsel failed to investigate and erroneously advised him in relation to the plea agreement.

10.   There were cumulative errors.

ECF No. 24.

## Discussion

**A.    Standard of review**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**B.    Ground 1**

In Ground 1, Brass alleges that his federal constitutional rights were violated when the state district court impermissibly admitted the revolver. ECF No. 24 at 23. Because the revolver and ammunition were not the same type found at the crime scenes and because there was no evidence that he actually owned or possessed the revolver, Brass alleges that this evidence was not relevant, was unfairly prejudicial, and confused and misled the jury. *Id.* at 23-24. In Brass's appeal of his judgment of conviction, the Nevada Supreme Court held:

> Brass argues that the district court erred in admitting evidence related to a firearm recovered from his parents' home. We discern no abuse of discretion. *See Archanian v. State*, 122 Nev. 1019, 1029, 145 P.3d 1008, 1016 (2006) ("District courts are vested with considerable discretion in determining the relevance and

admissibility of evidence."). As the firearm was recovered days after the shooting from a home where Brass had been staying and was of a similar caliber to bullet fragments recovered at the scene, Brass did not demonstrate that the district court's decision was "manifestly wrong." *Id.* Moreover, as Brass was acquitted of the charges resulting from the incident where only two of the three assailants were armed, he did not demonstrate that the jury was misled. *See* NRS 48.035(1) ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.").

ECF No. 36-1 at 1-2. The Nevada Supreme Court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Prior to trial, Brass moved to suppress "the weapons seized from [his] parent's house" because "they [were] not tied in any way to the two robberies for which [he was] charged." ECF No. 32-5 at 5. A hearing was held on Brass's motion. *See* ECF No. 32-6. The state district court declined to determine whether it would admit the revolver found at Brass's parents' house; rather, the state district court indicated that it was "going to have to hear the testimony" first. *Id.* at 67. The state district court explained that "[i]f [the evidence led it] to believe that [Brass was] probably there [at the crime scene] and he probably had a gun, then . . . the fact that a gun was recovered in a time not too distant in terms of proximity" was relevant and the revolver would be admitted; however, "if it appear[ed] that he's there and nobody has any reason to place a gun in his hand, it's probably not coming in." *Id.* at 67-68.

Later, during the second day of trial, Victor Manuel Abris and Lovardo Ledesma Nunez, victims of the September 22, 2006 events, both testified that all four African American men had handguns. ECF No. 33-2 at 219-220, 232. Similarly, a witness to the September 22, 2006 events, Oscar Carcamo, testified that each of the four African American men had a gun. *Id.* at 244, 249. At the close of testimony on the second day of trial, the state district court indicated that "we've

got three different witnesses who all say four [of the individuals] were armed and four were shooting," which puts Brass "in at last constructive possession of a gun." *Id.* at 259. Therefore, the state district court explained that it thought "the relevance [of the revolver found in Brass's parents' house] is great and the probative [value] outweighs the prejudice." *Id.*

The following day, Jessie Sams, a crime scene analyst, testified that she "was called in on a search warrant to recover evidence" from Brass's parents' residence. ECF No. 33-4 at 21-22. Sams testified that she located a black backpack in the residence that contained some ammunition and a "Taurus .38 special ultra light revolver." *Id.* at 27-28. Sams explained that the latent fingerprints on the revolver "were not of sufficient quality" for comparison purposes, and that there were no "identifiers to determine who owned th[e] backpack." *Id.* at 28, 32-33. It was later determined that "[t]he evidence bullets and cartridge cases [recovered from the scene] had not been fired by the Taurus revolver." ECF No. 63-1.

"A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). "[C]laims deal[ing] with admission of evidence" are "issue[s] of state law," *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990). Thus, the issue before this court is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). In order for the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Not only must there be "*no* permissible inference the jury

1  may draw from the evidence," but also the evidence must "be of such quality as necessarily

2  prevents a fair trial." *Jammal*, 926 F.2d at 920 (emphasis in original) (citation omitted).

3         Although the revolver found at Brass's parents' residence was not linked to the physical

4  evidence recovered from the crime scene and there was nothing connecting Brass to the revolver

5  other than the location where it was found, it cannot be concluded that the admission of the

6  revolver rendered Brass's trial fundamentally unfair in violation of his due process rights.

7  *Estelle*, 502 U.S. at 67; *Sublett*, 63 F.3d at 930; *Jammal*, 926 F.2d at 920. As the state district

8  court noted, two victims and one witness testified that all four African American men had

9  handguns during the events on September 22, 2006. ECF No. 33-2 at 219-220, 232, 244, 249.

10 Therefore, there was a permissible inference to be drawn from the admission of the revolver: that

11 Brass was potentially one of the four armed individuals because he had access to a handgun.

12 *Jammal*, 926 F.2d at 920. Further, "[u]nder AEDPA, even clearly erroneous admissions of

13 evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

14 corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

15 Court." *Yarborough*, 568 F.3d at 1101 (citing 28 U.S.C. § 2254(d)); *see also Dowling v. United*

16 *States*, 493 U.S. 342, 352 (1990) (explaining that the Supreme Court has "defined the category of

17 infractions that violate 'fundamental fairness' very narrowly"). And importantly, the Supreme

18 Court "has not yet made a ruling that admission of irrelevant or overtly prejudicial evidence

19 constitutes a due process violation sufficient to warrant issuance of the writ." *Id*. Accordingly,

20 because the Nevada Supreme Court reasonably denied Brass relief on this claim, Brass is denied

21 federal habeas relief for Ground 1.

22 ///

23 ///

9

1  **C.     Ground 2**

2       In Ground 2, Brass alleges that his federal constitutional rights were violated when the

3  state district court joined the two September 2006 incidents at trial. ECF No. 24 at 24. In

4  Brass's appeal of his judgment of conviction, the Nevada Supreme Court held:

5       Brass argues that the district court improperly joined two separate instances for
        trial. However, because the two separate transactions, which were temporally and
6       geographically proximate as well as methodically similar, "constitute[ed] parts of
        a common scheme or plan," *see* NRS 173.115(2), we conclude that the district court
7       did not abuse its discretion. *See Graves v. State*, 112 Nev. 118, 128, 912 P.2d 234,
        240 (1996) (concluding that defendant's systematic walk from one casino to
8       another where he attempted to steal while in each constituted a common scheme);
        *Tillema v. State*, 112 Nev. 266, 268, 914 P.2d 605, 606-07 (1996) (holding that
9       vehicle burglaries 17 days apart were part of a common scheme or plan). Moreover,
        as Brass was acquitted of the charges resulting from the September 15, 2006,
10      incident, he did not demonstrate "a substantial and injurious effect on the jury's
        verdict," *Weber v. State*, 121 Nev. 554, 570-71, 119 P.3d 107, 119 (2005), as the
11      jury carefully considered the evidence relating to each charge did not infer from the
        joinder of charges that Brass had a criminal disposition.

12

13  ECF No. 36-1 at 2. The Nevada Supreme Court's rejection of this claim was neither contrary to

14  nor an unreasonable application of clearly established law as determined by the United States

15  Supreme Court.

16       The State moved to join Brass's two cases. *See* ECF No. 32-3 at 2. Brass opposed the

17  motion. ECF No. 31-6. Following oral argument, the state district court granted the motion.

18  ECF No. 32-3 at 8. The state district court explained that it

19      finds that the State has shown that the two incidents are connected together and that
        there is cross-admissibility regarding the two incidents. This cross-admissibility
20      pursuant to NRS 48.045 could be used to show motive, intent, preparation, plan,
        knowledge, identity, absence or lack of mistake. The Court finds that the cases are
21      so highly similar, in that they occurred one week apart, both occurred on Friday
        evenings between 10:00 and approximately 10:30, they occurred in relatively close
22      areas of town, their factually and similar - - factually similar in that they involve
        black males who are approaching groups of Hispanic males. In both cases these
23      Hispanic males were robbed at gunpoint by the black males; in both cases there
        were shots fired when the Hispanics did not comply or chose to run from the scene.

1    Based up on these similarities, the Court finds that the probative value outweighs
2    the prejudicial, the possibility of prejudice to the defendant.

3    *Id.* at 8-9. The jury was later instructed that "[e]ach charge and the evidence pertaining to it

4    should be considered separately. The fact that you may find a defendant guilty or not guilty as

5    to one of the offenses charged should not control your verdict as to any other offense charged."

6    ECF No. 33-6 at 12.

7    A court "may grant habeas relief on a joinder challenge only if the joinder resulted in an

8    unfair trial. There is no prejudicial constitutional violation unless simultaneous trial of more

9    than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence,

10   violative of due process." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (internal

11   quotation marks omitted) (quoting *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir.

12   2001)); *see also Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998) ("[M]isjoinder must

13   have 'result[ed] in prejudice so great as to deny [Petitioner] his Fifth Amendment right to a fair

14   trial' in order for us to find that [Petitioner] suffered a constitutional violation."). As to

15   prejudice, the court must ask "'if the impermissible joinder had a substantial and injurious

16   effect or influence in determining the jury's verdict.'" *Davis*, 384 F.3d at 638 (quoting

17   *Sandoval*, 241 F.3d at 772). The Ninth Circuit explained that it "focuses particularly on cross-

18   admissibility of evidence and the danger of 'spillover' from one charge to another, especially

19   where one charge or set of charges is weaker than another." *Id.*; *see also Sandoval*, 241 F.3d at

20   772 ("[R]ecogniz[ing] that the risk of undue prejudice is particularly great whenever joinder of

21   counts allows evidence of other crimes to be introduced in a trial where the evidence would

22   otherwise be inadmissible.") Reversal of a conviction is not warranted if "the evidence was so

23   strong that any due process violation in the joinder had no 'substantial and injurious effect or

1   influence in determining the jury's verdict' with regard to that offense." *Bean*, 163 F.3d at 1086

2   (citing *Brecht v. Abramson*, 507 U.S. 619, 637 (1993)).

3           Based upon this court's review of the record, it cannot be determined that the joinder of

4   the two September 2006 incidents rendered Brass's trial fundamentally unfair. *Davis*, 384 F.3d

5   at 638. Due to the location of Brass's cellular telephone and his police interview statements, it

6   appears that evidence related to the September 22, 2006 events was somewhat stronger than the

7   evidence related to the September 15, 2006 events, which only amounted to a fingerprint found

8   near the scene and Brass's association with the shooter. However, it also appears that pursuant

9   to Nevada law, the evidence from the two incidents would be cross-admissible because, as the

10  state district court explained, the incidents were similar and connected. ECF No. 32-3 at 8-9;

11  *see also* Nev. Rev. Stat. § 48.045(2) ("Evidence of other crimes, wrongs or acts . . . may . . . be

12  admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

13  absence of mistake or accident."). Moreover, as was the case here, *see* ECF No. 33-6 at 12,

14  prejudice can be "limited through an instruction directing the jury to consider each count

15  separately." *Davis*, 384 F.3d at 639 (citing *United States v. Lane*, 474 U.S. 438, 450 n.13

16  (1986)). Finally, because Brass was only found guilty of the charges related to the September

17  22, 2006 events, ECF No. 34-1, it cannot be concluded that the joinder "had a substantial and

18  injurious effect or influence in determining the jury's verdict." *Davis*, 384 F.3d at 638. Indeed,

19  the Ninth Circuit has explained that acquittal on one joined charge establishes that the jury

20  successfully compartmentalized the evidence. *See Featherstone v. Estelle*, 948 F.2d 1497,

21  1503-04 (9th Cir. 1991) ("[I]t is apparent from the jury's discerning verdict that it followed the

22  court's instructions to regard each count as separate and distinct."). Accordingly, because the

23

1 Nevada Supreme Court reasonably denied Brass relief on this claim, Brass is denied federal

2 habeas relief for Ground 2.

3 **D.      Ground 3**

4           In Ground 3, Brass argues that his federal constitutional rights to confront and cross-

5 examine witnesses and to a fair trial were violated when the state district court improperly

6 allowed the prior testimony of two unavailable witnesses, Leodelgado Leon Carlos and Cezar

7 Carrizales. ECF No. 24 at 26. Brass contends that the State did not specifically identify the

8 efforts it made to secure the attendance of these witnesses for trial, his previous cross-

9 examination of these witnesses did not touch upon his later-developed theory of defense, and

10 the jury never heard these witnesses' live testimony. *Id.* at 26-27. In Brass's appeal of his

11 judgment of conviction, the Nevada Supreme Court held:

12           Brass argues that the district court erred in permitting the introduction of the
          preliminary hearing testimony of two witnesses as violative of *Crawford v.*
13        *Washington*, 541 U.S. 36 (2004), and unfairly prejudicial. We disagree. The
          admission of the preliminary hearing testimony did not violate the Confrontation
14        Clause because Brass was represented by counsel at the preliminary hearing,
          counsel cross-examined the witnesses at the hearing, and the witnesses were not in
15        the United States at the time of trial. *See Chavez v. State*, ___ Nev. ___, ___, 213
          P.3d 476, 485-86 (2009) (providing that admission of deceased victim's
16        preliminary hearing testimony did not violate defendant's Confrontation rights);
          *Grant v. State*, 117 Nev. 427, 432, 24 P.3d 761, 764 (2001) ("[T]he admission of
17        prior testimony comports with the requirements of the Sixth Amendment of the
          United States Constitution provided that defense counsel had the opportunity to,
18        and in fact did, thoroughly cross-examine the witness, and the witness was actually
          unavailable for trial."); *see also Funches v. State*, 113 Nev. 916, 920, 944 P.2d 775,
19        777-78 (1997). Moreover, both witnesses testified to the manner in which they were
          accosted and the injuries they received in the shooting and thus their testimony had
20        probative value that was not outweighed by the prejudicial effect. *See* NRS
          48.035(1). Therefore, the district court did not err in admitting the preliminary
21        hearing testimony.

22

23

1  ECF No. 36-1 at 3. The Nevada Supreme Court's rejection of this claim was neither contrary to

2  nor an unreasonable application of clearly established law as determined by the United States

3  Supreme Court.

4       The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions,

5  the accused shall enjoy the right . . . to be confronted with the witnesses against him." "[A]

6  primary interest secured by [the Confrontation Clause] is the right of cross-examination."

7  *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). While "the Confrontation Clause guarantees an

8  opportunity for effective cross-examination," it does guarantee "cross-examination that is

9  effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van*

10 *Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted); *see also Kentucky v.*

11 *Stincer*, 482 U.S. 730, 739 (1987) ("[T]he Confrontation Clause's functional purpose i[s]

12 ensuring a defendant an opportunity for cross-examination."). The Confrontation Clause bars

13 "admission of testimonial statements of a witness who did not appear at trial unless he was

14 unavailable to testify, and the defendant had had a prior opportunity for cross-examination."

15 *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). "[A] witness is not 'unavailable' . . .

16 unless the prosecutorial authorities have made a good-faith effort to obtain his presence at

17 trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968); *see also Christian v. Rhode*, 41 F.3d 461,

18 467 (9th Cir. 1994) ("The lengths to which a prosecutor must go to establish good faith is a

19 question of reasonableness."). If "[a] Confrontation Clause violation" occurs, this court

20 conducts a harmless error analysis. *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002)

21 (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (holding that habeas relief is proper only if

22 an error by the state courts "had substantial and injurious effect or influence in determining the

23 jury's verdict")).

On October 30, 2006, a preliminary hearing was held for Brass and his three co-defendants, Nunnery, Brandon Bland, and Carlton Fowler. *See* ECF No. 89-1. Brass was represented by counsel at this hearing. *See id.* at 3. Carrizales and Leon-Carlos testified and were cross-examined by Brass's counsel and the other three defense attorneys. *Id.* at 5-28.

Prior to Brass's trial, the State moved to use Leon-Carlos's and Carrizales's preliminary hearing testimonies at Brass's trial, explaining that Leon-Carlos and Carrizales resided in rural Mexico, were not subject to the subpoena power of the state district court, and had no legal ability to enter the United States following their previous deportations. ECF No. 31-1 at 2. The State also explained that it "contacted various surviving victims and friends of these two witnesses in hopes of getting contact information," but "[n]o person contacted ha[d] an address" for either witness, and the State was unsuccessful at contacting either witness using one potential telephone number given to the State by an acquaintance of the witnesses. *Id.* at 3-4. The state district court granted the motion. *See* ECF No. 33-3 at 8-9. Thereafter, at Brass's trial, the State read its prior questions and the witnesses' answers from the preliminary hearing transcript, and Brass's trial counsel read the four defense attorneys' prior questions and the witnesses' answers. *Id.* at 9-72.

Based on these facts, the Nevada Supreme Court reasonably concluded that there was no Confrontation Clause violation. *Crawford*, 541 U.S. at 53-54. First, as previously discussed, Brass's counsel cross-examined Leon-Carlos and Carrizales at the preliminary hearing. *See Barber*, 390 U.S. at 725 ("[T]here may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable."); *see also California v. Green*, 399 U.S. 149, 166 (1970) ("If [the witness] had died or was otherwise

15

unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State.") And second, Leon-Carlos and Carrizales resided in rural Mexico at the time of Brass's trial and were reasonably unreachable. Accordingly, because there was no Confrontation Clause violation, the Nevada Supreme Court reasonably denied relief. Brass is denied federal habeas relief for Ground 3.

## E.      Ground 5

In Ground 5, Brass alleges that his federal constitutional rights were violated when the state district court impermissibly denied his theory of defense instruction, instead giving a mere presence instruction, and then allowed a conspiracy instruction that contradicted the mere presence instruction. ECF No. 24 at 28-30. In Brass's appeal of his judgment of conviction, the Nevada Supreme Court held:

> Brass argues that the district court erred when it denied his instruction on the theory of defense. We disagree. While a defendant "'is entitled, upon request, to a jury instruction on his theory of the case so long as there is some evidence . . . to support it'" *Harris v. State*, 106 Nev. 667, 670, 799 P.2d 1104, 1105-06 (1990) (quoting *Roberts v. State*, 102 Nev. 170, 172-73, 717 P.2d 1115, 1116 (1986)), the district court may refuse such an instruction if it is substantially covered by other instructions, *Earl v. State*, 111 Nev. 1304, 1308, 904 P.2d 1029, 1031 (1995). As the district court provided a correct "mere presence" instruction, *see Walker v. State*, 113 Nev. 853, 869, 944 P.2d 762, 772-73 (1997), we discern no abuse of discretion in denying the proposed instruction, *see Nelson v. State*, 123 Nev. 534, 548, 170 P.3d 517, 527 (2007) (reviewing district court's decision concerning jury instructions for abuse of discretion).

1   ECF No. 36-1 at 2-3. The Nevada Supreme Court's rejection of this claim was neither contrary

2   to nor an unreasonable application of clearly established law as determined by the United States

3   Supreme Court.

4        Issues relating to jury instructions are not cognizable in federal habeas corpus unless

5   they violate due process. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *see also Gilmore v.*

6   *Taylor*, 508 U.S. 333, 342 (1993) ("[W]e have never said that the possibility of a jury

7   misapplying state law gives rise to federal constitutional error."). The question is "'whether the

8   ailing instruction by itself so infected the entire trial that the resulting conviction violates due

9   process', . . . not merely whether 'the instruction is undesirable, erroneous, or even universally

10  condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414

11  U.S. 141, 146-47 (1973)). A challenged instruction "'may not be judged in artificial isolation,'

12  but must be considered in the context of the instructions as a whole and the trial record."

13  *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147); *see also United States v. Frega*, 179

14  F.3d 793, 806 n.16 (9th Cir. 1999) (explaining that a court inquires as to "whether the

15  instructions as a whole are misleading or inadequate to guide the jury's deliberation" (internal

16  citations omitted)). Furthermore, jurors are presumed to follow the instructions that they are

17  given. *United States v. Olano*, 507 U.S. 725, 740 (1993). Even if an instruction contains a

18  constitutional error, the court must then "apply the harmless-error analysis mandated by

19  *Brecht*[ *v. Abrahamson*, 507 U.S. 619 (1993)]." *Calderon v. Coleman,* 525 U.S. 141, 146

20  (1998). The question is whether the error had a "substantial and injurious effect or influence in

21  determining the jury's verdict." *Id.* at 145.

22        The heart of Brass's argument is that the district court prevented him from establishing

23  his defense theory by denying his proposed instructions. *See Mathews v. United States*, 485

17

U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). Brass's proposed jury instruction provided:

> It is the defendant's theory of defense that he was not present on the night of 9/15/06 on Eastern where the robbery occurred. The defense maintains he was merely present sometime around the date of the robbery as evidenced by his fingerprint on the gate. It is also the defendant's theory of defense that he was merely present at the scene of the robbery which occurred on 9/22/06 on Pecos, and did not know Eugene Nunnery was going to rob and shoot the victims. It is the State's burden to prove that the defendant was present at the scene of the crimes and knowingly, voluntarily and willfully participated in the robberies. If the State fails to prove this beyond a reasonable doubt, you must find the defendant not guilty.

ECF No. 33-5 at 2. The state district court refused to give this instruction, explaining "the law says the defense is entitled to an instruction on their theory of the case, but I think their theory of the case is mere presence and we have a mere presence instruction and so I think the defense theory of the case is being instructed." ECF No. 33-4 at 5. The mere presence instruction given by the state district court provided:

> Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the Defendant is a participant and not merely a knowing spectator. However, the presence of a person at the scene of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of that crime.

ECF No. 33-6 at 38.

> The jury was also instructed on conspiracies:

> Evidence that a person was in the company or associated with one or more other persons alleged or proven to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy. However, you are instructed that presence, companionship, and conduct before, during and after the offense are circumstances from which one's participation in the criminal intent may be inferred.

*Id.* at 36. Brass's trial counsel objected to this instruction because it "contradict[ed] the mere presence instruction." ECF No. 33-4 at 13. The state district court overruled the objection. *Id.*

The Nevada Supreme Court reasonably denied relief to Brass. Brass's proposed instruction on mere presence was rejected in favor of another mere presence instruction. *See* ECF Nos. 33-5 at 2, ECF No. 33-6 at 38. Although it was not given in the manner Brass desired, Brass's theory of defense—that he was merely present during the September 22, 2006 events—was presented in the jury instructions. *See Mathews*, 485 U.S. at 63. Therefore, this court cannot conclude that Brass's due process rights were violated. *Estelle,* 502 U.S. at 72 (1991). Turning to the conspiracy jury instruction, the Court disagrees that this instruction contradicts the mere presence instruction. Rather, both instructions, although stated in slightly different ways, provide that while presence is one circumstance which may be considered in determining participation, evidence only of mere presence or association alone is not sufficient evidence. Thus, Brass fails to demonstrate a violation of his due process rights. *Id.* Because the Nevada Supreme Court reasonably denied this claim, Brass is denied federal habeas relief for Ground 5.

## F.    Ground 6

In Ground 6, Brass raises six allegations of ineffectiveness of his trial counsel. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

//

### 1.     Subpart a

In Ground 6(a), Brass alleges that his trial counsel failed to investigate the physical evidence presented at trial or to hire appropriate experts to refute that physical evidence. ECF No. 24 at 30. Specifically, Brass argues that his trial counsel failed to secure an expert to independently test the bullet fragment found at the September 22, 2006 crime scene or offer testimony that the bullet fragment could not be attributed to the revolver found at his parents' residence, failed to investigate whether the revolver actually belonged to Brass, and failed to test Brass's sweatshirts for gun powder residue. *Id.* at 31-32. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed counsel was ineffective for failing to retain and present evidence by a ballistics expert to prove that a bullet fragment recovered from the second crime scene was not fired from a revolver found in appellant's home. Appellant failed to demonstrate deficiency or prejudice. Counsel was not objectively unreasonable for not retaining such an expert when no evidence suggested that the revolver was at the crime scene. Further, despite having been granted an evidentiary hearing, appellant presented no evidence of what such an expert would have said and thus failed to demonstrate a reasonable probability of a different outcome had counsel investigated the bullet fragment. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). We therefore conclude that the district court did not err in denying this claim.

> [A]ppellant [also] claimed counsel was ineffective for failing to retain and present evidence by a forensic expert that appellant's hoodies did not have any gunshot residue on them. Appellant failed to demonstrate deficiency or prejudice. Appellant did not demonstrate that it was objectively unreasonable for counsel to not have tested clothing that was retrieved nearly a week after one crime and nearly two weeks after another. Further, appellant presented no evidence of what such an expert would have said and thus failed to demonstrate a reasonable probability of a different outcome had counsel investigated the hoodies. *See id.* We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 3-4. The Nevada Supreme Court's rejection of Brass's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Additionally, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* This investigatory duty includes investigating the defendant's "most important defense," *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994), and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). When the record demonstrates that trial counsel was well-informed, and the defendant fails to provide what additional information would have been gained by the investigation he now claims was necessary, an ineffective assistance claim fails. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

First, Brass contends that his trial counsel should have independently tested the bullet fragment found at the September 22, 2006 crime scene to show that it could not have been from the revolver found at his parents' residence. ECF No. 24 at 30-32. During Brass's trial counsel's cross-examination of the State's firearm expert, Brass's trial counsel clarified that the "chunk of lead" that was found at the September 22, 2006 crime scene could have come from a variety of different types of guns, not just from a revolver. ECF No. 33-3 at 121-22. And during his closing argument, Brass's trial counsel argued that the bullet fragment found at the September 22, 2006 crime scene "could have been from five different calibers of guns," not necessarily the revolver.

1  ECF No. 33-4 at 118. Because Brass's trial counsel was able to highlight the fact that the bullet

2  fragment may not have come from the revolver during cross-examination, it cannot be

3  determined that Brass's trial counsel was deficient for failing to call his own expert witness to

4  accomplish the same task. *Strickland*, 466 U.S. at 688; *see also Harrington*, 562 U.S. at 111 ("In

5  many instances cross-examination will be sufficient to expose defects in an expert's

6  presentation.")

7          Second, Brass contends that his trial counsel should have investigated whether the

8  revolver belonged to Brass. ECF No. 24 at 30-32. During Brass's trial counsel's cross-

9  examination of the State's crime scene analyst, Brass's trial counsel clarified that there was no

10  evidence linking the revolver specifically to Brass. ECF No. 33-4 at 31-33. And during his

11  closing argument, Brass's trial counsel argued that "[t]here's absolutely no evidence" that the

12  revolver was Brass's gun. ECF No. 33-4 at 117. Later, during Brass's post-conviction

13  evidentiary hearing, Brass's trial counsel testified that he did not consider hiring an expert to

14  challenge the admissibility of the revolver because "nobody was claiming that [the revolver] was

15  the same weapon involved in the murders, in the robberies." ECF No. 39 at 7. Because it was

16  undisputed that the revolver did not kill the two victims and because Brass's trial counsel was

17  able to cast doubt about Brass's link to the revolver during cross-examination, it cannot be

18  concluded that Brass's trial counsel was deficient for failing to fulfill his investigative duties.

19  *Strickland*, 466 U.S. at 688, 691.

20          Third, Brass contends that his trial counsel should have investigated whether his

21  sweatshirts contained gun powder residue. ECF No. 24 at 30-32. It does not appear that this was

22  an issue discussed at Brass's trial or post-conviction evidentiary hearing. Thus, it is difficult to

23  assess whether Brass's trial counsel was deficient. In fact, it may have been a strategic decision

to not test the sweatshirt, if there was any possible residue still available to test. *See, e.g., Skinner v. Quarterman*, 576 F.3d 214 (5th Cir. 2009) (counsel was not deficient for failing to conduct DNA tests of crime scene evidence because there was a risk that such testing would reveal that the DNA belonged to the defendant).

However, regardless of whether Brass's trial counsel was deficient regarding the foregoing investigatory decisions, Brass must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the Nevada Supreme Court reasonably concluded, Brass cannot meet this burden. There is no evidence that a test of the bullet fragment would have shown that it was not from the revolver, that the revolver was not Brass's, or that Brass's sweatshirts lacked gun powder residue. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation.").

Because the Nevada Supreme Court reasonably determined that Brass failed to demonstrate that this trial counsel was ineffective, Brass is denied federal habeas relief for Ground 6(a).

### 2.    Subpart b

In Ground 6(b), Brass alleges that his trial counsel refused to allow him to testify at trial. ECF No. 24 at 32. Brass elaborates that his trial counsel advised him that the State "was aggressive in its tactics" and "would twist the meaning of [his] words," and that this advice made him "felt [sic] as if he had no meaningful choice to testify." *Id.* at 33. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed counsel was ineffective for refusing to allow him to testify at trial. Appellant failed to demonstrate deficiency or prejudice. Appellant, who posed no questions to counsel and presented no other evidence to support his claim, failed to demonstrate the facts underlying his claim by a preponderance of the evidence.

> Further, the district court's finding that appellant was advised that the right to testify was his, not counsel's, choice, is supported by substantial evidence in the record. We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 5. The Nevada Supreme Court's rejection of Brass's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). And this decision of whether to testify on his own behalf is one "the accused has the ultimate authority to make." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The state district court canvassed Brass about his right to testify. *See* ECF No. 33-2 at 5-7. Among other things, the state district court explained that it "want[ed Brass] to talk to [his trial counsel] about it when the time comes and make a joint decision on whether or not [Brass was] going to testify." *Id.* at 7. The state district court continued, "[u]ltimately, the decision is yours. [Trial counsel] can only give you advice, but he's pretty good at giving advice, so you need to take that into consideration." *Id.* Brass indicated that he understood. *Id.* at 5-7.

The state district court's proper advisement that only Brass could decide whether to testify refutes Brass's argument that he felt that he had no choice regarding testifying. Additionally, beyond his own self-serving statements in his petition, Brass fails to present any evidence regarding his trial counsel's actions in this regard. Rather, it appears that Brass's trial counsel was simply giving Brass candid advice about the consequences of testifying. Accordingly, the Nevada Supreme Court reasonably concluded that Brass failed to demonstrate deficiency. *Strickland*, 466 U.S. at 688. Brass is denied federal habeas relief for Ground 6(b).

**3.      Subpart c**

In Ground 6(c), Brass alleges that his trial counsel failed to object to two instances of alleged prosecutorial misconduct during closing argument. ECF No. 24 at 33. Specifically, Brass alleges that the State suggested that he was a liar and vouched for the credibility of a witness. *Id.* at 33-34. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed counsel was ineffective for failing to object to prosecutorial misconduct in opening and closing statements where the State inferred that appellant was a story-changing liar and vouched for the credibility of a witness. Appellant failed to demonstrate deficiency or prejudice. The State neither called appellant a liar nor vouched for any witness's credibility. Rather, the State listed appellant's various charges in his version of events and suggested why the ultimate version was not likely. Such inferences are permissible in closing argument. *Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990). Further, the State simply pointed out the lack of motive for its witness [to] fabricate, which did not rise to vouching. *See Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004). We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 4. The Nevada Supreme Court's rejection of Brass's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

The State made the following comments during its closing argument:

> . . . I want you to think about common sense when you consider the explanation George Brass provided to Detective McGrath. Now, I'm going to start in reverse order in this case; that is, with the crime scene of September 22, 2006.

> The defendant's explanation, ultimately his explanation was that he was with three other guys, Eugene Nunnery, Brandon Bland and Carlton Fowler when the three of them, unbeknownst to George Brass, decided apparently to commit a robbery when shots rang out. And think about that explanation in light of your common sense because remember it was his third or fourth version of events.

> Initially George Brass said to Detective McGrath, I don't know anything about this. Explanation number one. And when Detective McGrath, now Sergeant McGrath, pulled out that cell phone that belonged to the defendant, the explanation changed. The defendant said, Well, somebody else may have had my phone and dropped it here.

> And eventually that morphed into yet a third version of events, which was, I walked alone to this apartment complex and ran into a couple of friends of mine named Drey and Money Mac and I heard some gunshots. And that version too morphed in yet - - into yet another version, which was, Okay, I was in a car with Eugene Nunnery, Brandon Bland and Carlton Fowler. Indeed we ended up at this apartment complex and something happened between Eugene Nunnery and one of these Hispanic guys and shots rang out and I ran.
>
> At least four different versions of events. Deny and then adapt your story to fit the evidence you know the police have against you. That's what George Brass did.

ECF No. 33-4 at 77-78. Later, the State commented:

> And think about this: David, the young man on the balcony who saw this, doesn't even know the victims in this case. What possible reason would he have to fabricate and make up this notion that all four robbers had guns if they didn't? A completely objective independent eyewitness.

*Id.* at 79-80.

The Nevada Supreme Court reasonably concluded that Brass failed to demonstrate deficiency on the part of his trial counsel for failing to object to these comments. *Strickland*, 466 U.S. at 688. Indeed, "[t]he relevant question" regarding prosecutorial misconduct, "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). It cannot be concluded that either of the foregoing comments infected Brass's trial with unfairness.

First, the Nevada Supreme Court reasonably concluded that the State did not suggest that Brass was a liar. Rather, the State merely commented on the evidence presented at trial and reasonable inferences that could be drawn from that evidence. *See Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (concluding that the State's closing argument did not infect the trial with unfairness because "the prosecutor's statements were supported by the evidence and

1   reasonable inferences that could be drawn from the evidence"). In fact, Detective Michael

2   McGrath testified that Brass initially told him that he "[d]idn't know anything" about the

3   second shooting incident, then he said that he was in the area of the shooting, then he said that

4   one of his co-defendants may have had his cellular telephone and left it at the scene, and then

5   he said that he was with his co-defendants when Nunnery bumped shoulders with one of the

6   victims resulting in Nunnery firing his weapon. ECF No. 33-3 at 140, 166, 168, 178-79, 182-

7   83. The State's closing argument was supported by this testimony. *See* ECF No. 33-4 at 77-78.

8        Second, the Nevada Supreme Court reasonably concluded that the State did not vouch

9   for any witness's credibility. "Vouching consists of placing the prestige of the government

10  behind a witness through personal assurances of the witness's veracity, or suggesting that

11  information not presented to the jury supports the witness's testimony." *United States v.*

12  *Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). Here, the State merely contended that a

13  witness, David, was telling the truth. The State did not personally assure David's veracity or

14  suggest that it had extra-record facts supporting David's testimony. *See* ECF No. 33-4 at 79-80.

15  This was proper. *See Necoechea* 986 F.2d at 1279 ("The prosecutor here argued that [the

16  witness] told the truth because, if she were lying, she would have done a better job. This is

17  simply an inference from evidence in the record. It is not . . . a reference to extra-record facts or

18  a personal guarantee of [the witness]'s veracity. The prosecutor merely argued that [the

19  witness] was telling the truth, an argument the prosecutor had to make in order to convict [the

20  defendant]. These statements do not imply that the government is assuring [the witness]'s

21  veracity, and do not reflect the prosecutor's personal beliefs.").

22       Because the Nevada Supreme Court reasonably denied Brass's *Strickland* claim, Brass

23  is denied federal habeas relief for Ground 6(c).

28

1  ///

2  ///

3  **4.      Subpart d**

4        In Ground 6(d), Brass alleges that his trial counsel failed to object to the unlawfully

5  composed jury that was void of African Americans. ECF No. 24 at 34. Brass elaborates that he

6  recalls there only being two African Americans in the entire venire, no African American jurors

7  in the petit jury, and a great portion of members of Hispanic descent in the final petit jury. *Id.* at

8  34-35. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court

9  held:

> [A]ppellant claimed counsel was ineffective for failing to object to the jury being
> void of a cross-section of African Americans. Appellant failed to demonstrate
> deficiency or prejudice. "The Sixth Amendment does not guarantee a jury or even
> a venire that is a perfect cross section of the community," and appellant neither
> made any argument nor presented any evidence that African Americans were
> systematically excluded from the venire. *Williams v. State*, 121 Nev. 934, 939-40,
> 125 P.3d 627, 631 (2005). Indeed, appellant conceded that the venire contained at
> least two African Americans. We therefore conclude that the district court did not
> err in denying this claim.

15  ECF No. 40-2 at 5. The Nevada Supreme Court's rejection of Brass's *Strickland* claim was

16  neither contrary to nor an unreasonable application of clearly established law as determined by

17  the United States Supreme Court.

18        Although "petit juries must be drawn from a source fairly representative of the

19  community," there is "no requirement that petit juries actually chosen must mirror the

20  community and reflect the various distinctive groups in the population." *Taylor v. Louisiana*,

21  419 U.S. 522, 538 (1975). Indeed, "Defendants are not entitled to a jury of any particular

22  composition." *Id.* The United States Supreme Court has established the following requirements

23  for establishing a prima facie violation of the fair-cross-section requirement:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Under the third prong, "[a] showing that a jury venire underrepresents an identifiable group is, without more, an insufficient showing of systematic exclusion." *See Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004).

Brass has not alleged that African Americans were systematically excluded from the venire. *Duren*, 439 U.S. at 364. Rather, Brass admits that there were two African Americans in the venire. ECF No. 24 at 34. Accordingly, because Brass fails to meet the third *Duren* prong demonstrating systematic exclusion, the Nevada Supreme Court reasonably concluded that Brass's trial counsel was not deficient for not objecting to the venire. *Strickland*, 466 U.S. at 688. Brass is denied federal habeas relief for Ground 6(d).

### 5.   Subpart e

In Ground 6(e), Brass alleges that his trial counsel failed to object Jury Instruction Nos. 8, 11, 12, and 33. ECF No. 24 at 35.

### a.   Jury Instruction No. 8

Jury Instruction No. 8 provided, in part:

> Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing. All three elements—willfulness, deliberation, and premeditation—must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder. Willfulness is the intent to kill. There need be no appreciable space of time between formation of the intent to kill and the act of killing.

ECF No. 33-6 at 17. And Jury Instruction No. 13 provided: "All murder which is not murder of the first degree of murder is murder of the second degree. Murder of the second degree is murder with malice aforethought, but without the admixture of premeditation and deliberation." *Id.* at 22.

Brass argues that, when read in conjunction, Jury Instruction Nos. 8 and 13 cause confusion because Jury Instruction No. 13, by employing the term "malice aforethought" instead of "willfulness," impresses upon the jury that "willfulness" and "malice aforethought" are separate and mutually exclusive elements. ECF No. 24 at 36. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed counsel was ineffective for failing to object to jury instruction no. 8, which defined willful, deliberate, and premeditated first-degree murder, on the ground that it erased the distinction between first- and second-degree murder. Appellant failed to demonstrate deficiency or prejudice. The language in jury instruction nos. 8 and 9 tracks verbatim that set forth in *Byford v. State*, 116 Nev. 215, 236-37, 994 P.2d 700, 714-15 (2000). Further, even if the instruction were erroneous, appellant was convicted not only of first-degree murder but also of the robbery during the course of which the murder occurred such that he would have been liable for first-degree murder under the felony-murder rule. We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 2-3. This ruling was reasonable.

Jury Instruction No. 8 mirrors the instruction formulated by the Nevada Supreme Court "for use by the district courts in cases where defendants are charged with first-degree murder based on willful, deliberate, and premeditated killing." *Byford v. State*, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000). Further, Nev. Rev. Stat. § 200.010(1) provides that "[m]urder is the unlawful killing of a human being . . . [w]ith malice aforethought," and Nev. Rev. Stat. § 200.030(2) provides that "[m]urder of the second degree is all other kinds of murder" not amounting to first-degree murder. Jury Instruction No. 13 echoes these statutes. Therefore,

1   because Jury Instruction Nos. 8 and 13 comply with Nevada law, the Nevada Supreme Court

2   reasonably concluded that Brass's trial counsel was not deficient for not objecting to these

3   instructions. *Strickland*, 466 U.S. at 688.

4               **b.**      **Jury Instruction Nos. 11 and 12**

5       Jury Instruction No. 11 provided:

6   > There is a kind of murder which carries with it conclusive evidence of
    > premeditation and malice aforethought. This class of murder is murder committed
7   > in the perpetration or attempted perpetration of robbery. Therefore, a killing which
    > is committed in the perpetration of robbery or attempted robbery is deemed to be
8   > Murder of the First Degree, whether the killing was intentional or unintentional or
    > accidental. This is called the Felony-Murder Rule. The intent to perpetrate or
9   > attempt to perpetrate robbery must be proven beyond a reasonable doubt. In order
    > for the Felony-Murder rule to apply under a robbery theory, the intent to take the
10  > property must be formed prior to the act constituting the killing.

11  ECF No. 33-6 at 20. And Jury Instruction No. 12 provided, in part:

12  > The State has alleged that the defendant is criminally liable for the charge of First
    > Degree Murder under one or more principles . . . of criminal liability. . . . Your
13  > verdict must be unanimous as to the charge. However, you do not have to agree on
    > the theory of guilt or the principle of criminal liability. It is sufficient that each of
14  > you find beyond a reasonable doubt that the murder, under any one of the principles
    > of criminal liability, was Murder of the First Degree. Therefore, even if you cannot
15  > agree on whether the facts establish that the Defendant (1) is guilty of Premeditated
    > & Deliberate Murder, or (2) is guilty of Felony Murder, or (3) is liable as an aider
16  > & abettor or (4) is liable as a co-conspirator, your verdict shall be murder of the
    > first degree so long as all of you agree that the evidence establishes the Defendant's
17  > guilt of murder in the first degree under any one of the principles of criminal
    > liability.

18

19  *Id.* at 21.

20      Brass argues that Jury Instructions No. 8, which was discussed previously, and Jury

21  Instruction No. 11, when presented together, create gross ambiguity. ECF No. 24 at 37. And

22  Brass argues that Jury Instruction No. 12 suggests that the jurors did not have to come to a

23

1   unanimous decision and reinforces the ambiguity of Jury Instruction Nos. 8 and 11. *Id.* In

2   Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> Second, appellant claimed counsel was ineffective for failing to object to jury
> instruction nos. 11 and 12, on the theories that they conflict with jury instruction
> no. 8 and that jury instruction no. 12 forced him to defend against the various
> theories of liability without any proof of their underlying elements. Appellant failed
> to demonstrate deficiency or prejudice. Jury instruction no. 12 informed the jury of
> the State's alternate theories of liability while other jury instructions informed the
> jury of the elements necessary for each of those alternate theories: jury instruction
> no. 8 for willful, deliberate, and premeditated murder; jury instruction no. 11 for
> felony murder; jury instruction no. 21 for conspiracy; and jury instruction no. 28
> for aiding and abetting. *Cf. Tanksley v. State*, 113 Nev 844, 849, 944 P.2d 240, 243
> (1997) (noting that any ambiguity may be cured by taking the jury instructions as a
> whole). We therefore conclude that the district court did not err in denying these
> claims.

10   ECF No. 40-2 at 2-3. This ruling was reasonable.

11      As the Nevada Supreme Court reasonably noted, Jury Instruction No. 12 discussed the

12   theories of liability upon which the State relied upon for first-degree murder. *See* ECF No. 33-6

13   at 21. Jury Instruction Nos. 8 and 11 further described two of those alternate theories: willful,

14   deliberate, and premeditated murder in Jury Instruction No. 8, and felony murder in Jury

15   Instruction No. 11. *See id.* at 17, 20. Therefore, Jury Instruction Nos. 8, 11, and 12, when read

16   together, did not create confusion. Brass's second contention—that Jury Instruction No. 12

17   allowed the jury to come to a decision that was not unanimous—also lacks merit. *See Crawford

18   v. State*, 121 Nev. 744, 750, 121 P.3d 582, 586 (2005) ("Where the State proceeds on

19   alternative theories of first-degree felony murder and willful, deliberate, and premeditated first-

20   degree murder, we have consistently held that the jury need not unanimously agree on a single

21   theory of the murder."); *Walker v. State*, 113 Nev. 853, 870, 944 P.2d 762, 773 (1997) ("[W]e

22   conclude that the trial court did not err in instructing the jury that it did not have to

23   unanimously agree upon a theory of murder"). Accordingly, the Nevada Supreme Court

reasonably concluded that Brass's trial counsel was not deficient for not objecting to these instructions. *Strickland*, 466 U.S. at 688.

### c.   Jury Instruction No. 33

Jury Instruction No. 33 provided:

> The Defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense. A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the mind of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation. If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty.

ECF No. 33-6 at 42.

Brass argues that Jury Instruction No. 33 relieves the State of its burden of proof because the word "comparison" suggests that the defense has a duty to put forth evidence refuting the State's evidence, which improperly shifts the burden of proof onto the defense, and the word "feel" allows the jury to convict based upon emotions rather than reason. ECF No. 24 at 38. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed counsel was ineffective for failing to object to jury instruction no. 33, which defined reasonable doubt, on the grounds that it allowed the jury to convict based on emotion and it shifted the burden of proof to appellant. Appellant failed to demonstrate deficiency or prejudice. The challenged instruction was mandated by NRS 175.211, which this court has repeatedly upheld. *Buchanan v. State*, 119 Nev. 201, 221, 69 P.3d 694, 708 (2003). We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 2-3. This ruling was reasonable.

1   "[T]he Due Process Clause protects the accused against conviction except upon proof

2   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

3   charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he Constitution does not require that

4   any particular form of words be used in advising the jury of the government's burden of proof.

5   Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable

6   doubt to the jury.'" *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal citation omitted) (quoting

7   *Holland v. United States*, 348 U.S. 121, 140 (1954)). In assessing the constitutionality of a jury

8   instruction, it must be determined "whether there is a reasonable likelihood that the jury

9   understood the instructions to allow conviction based on proof insufficient to meet the *Winship*

10   standard." *Id.* at 6.

11   The Ninth Circuit evaluated the same reasonable doubt instruction in *Ramirez v.*

12   *Hatcher*. 136 F.3d 1209, 1210-11 (9th Cir. 1998). The Ninth Circuit held that "[a]lthough [it

13   did] not herald the Nevada instruction as exemplary, [it] conclude[d] that the overall charge left

14   the jury with an accurate impression of the government's heavy burden of proving guilt beyond

15   a reasonable doubt" such that "the jury charge satisfied the requirements of due process." *Id.* at

16   1215; *see also Nevius v. McDaniel*, 218 F.3d 940, 944 (9th Cir. 2000) (holding that the

17   reasonable doubt jury instruction was identical to the one in *Ramirez*, so "[t]he law of this

18   circuit thus forecloses Nevius's claim that his reasonable doubt instruction was

19   unconstitutional").

20   Additionally, Jury Instruction No. 33 complied with Nevada law. *See* Nev. Rev. Stat. §

21   175.211 (defining reasonable double and mandating that "[n]o other definition of reasonable

22   doubt may be given by the court to juries in criminal actions in this State"); *see also Buchanan*

23   *v. State*, 119 Nev. 201, 221, 69 P.3d 694, 708 (2003) (explaining that the Nevada Supreme

35

1 Court "has repeatedly reaffirmed the constitutionality of Nevada's reasonable doubt

2 instruction" codified in Nev. Rev. Stat. § 175.211). Because Jury Instruction No. 33's language

3 has been determined to be constitutional by the Ninth Circuit and because it complied with

4 Nevada law, the Nevada Supreme Court reasonably concluded that Brass's trial counsel was

5 not deficient for not objecting to the instruction. *Strickland*, 466 U.S. at 688.

6        Brass is denied federal habeas relief for Ground 6(e).

7 **G.**    **Ground 7**

8        In Ground 7, Brass raises three allegations of ineffectiveness of his appellate counsel.

9 The *Strickland* standard outlined in Ground 6 is also utilized to review appellate counsel's

10 actions: a  petitioner must show "that [appellate] counsel unreasonably failed to discover

11 nonfrivolous issues and to file a merits brief raising them" and then "that, but for his [appellate]

12 counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his

13 appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

14     **1.**    **Subpart a**

15        In Ground 7(a), Brass alleges that his appellate counsel failed to federalize his claims and

16 that he was prejudiced by this failure because he was deprived the opportunity to obtain the most

17 favorable standard of federal review available. ECF No. 24 at 39-40. In Brass's appeal of the

18 denial of his state habeas petition, the Nevada Supreme Court held:

19       [A]ppellant claimed that appellate counsel was ineffective for failing to federalize
      his claims on direct appeal. Appellant failed to demonstrate prejudice. Appellant
20       failed to demonstrate that he would have gained a more favorable standard of
      review on direct appeal had appellate counsel federalized the arguments. *See*
21       *Browning*, 120 Nev. at 365, 91 P.3d at 52. We therefore conclude that the district
      court did not err in denying this claim.

22

23

1   ECF No. 40-2 at 6. The Nevada Supreme Court's rejection of Brass's claim was neither contrary

2   to nor an unreasonable application of clearly established law as determined by the United States

3   Supreme Court.

4        Brass's appellate counsel testified at the post-conviction evidentiary hearing that

5   "[f]ederalizing [an] issue is making sure that you're preserving the issue for a federal court when

6   the time comes for the client." ECF No. 39 at 11. Brass's appellate counsel explained that there

7   was no reason he could think of why "Brass' direct appeal did not include any federal citations."

8   *Id.* at 12. However, when asked if, "[i]n retrospect, [he thought] that it would've been better

9   practice . . . to federalize th[e] issues [in Brass's] direct appeal," Brass's appellate counsel

10  answered in the affirmative. *Id.* at 12-13.

11       Brass's appellate counsel raised four issues on direct appeal: the state district court

12  erred in admitting the revolver, joining the two robbery incidents at trial, denying his theory of

13  defense jury instruction, and allowing the previous testimony of two witnesses. *See* ECF No.

14  35-4 at 2. Even if Brass's appellate counsel was deficient for failing to federalize these claims,

15  the Nevada Supreme Court reasonably concluded that Brass fails to demonstrate prejudice.

16  *Strickland*, 466 U.S. at 694; *Smith*, 528 U.S. at 285. Indeed, as the Nevada Supreme Court

17  reasonably determined, Brass fails to show that his claims would have been reviewed by it

18  under more favorable standards had his appellate counsel acted differently. *See Browning v.*

19  *State*, 120 Nev. 347, 365, 91 P.3d 39, 52 (2004) (dismissing the argument that the defendant's

20  "appellate counsel should have 'federalized' the issue and gained a more favorable standard of

21  review"). Further, regarding federal review, this court did not find that any of Brass's direct

22  appeal claims were unexhausted; rather, each of these claims have been reviewed by this court.

23  *See* Grounds 1, 2, 3, and 5 *supra*; *see also* ECF No. 84 at 5. Accordingly, because the Nevada

Supreme Court reasonably denied Brass's ineffective-assistance-of-appellate-counsel claim,

Brass is denied federal habeas relief for Ground 7(a).

///

### 2. Subpart b

In Ground 7(b), Brass alleges that his appellate counsel failed to raise ineffective-assistance-of-counsel claims. ECF No. 24 at 40. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant argued that appellate counsel was ineffective for failing to raise all of the substantive claims that underlaid his ineffective-assistance-of-trial-counsel claims. For the reasons discussed previously, appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced. We therefore conclude that the district court did not err in denying this claim.

ECF No. 40-2 at 6. This ruling was reasonable.

To the extent that Brass argues that his appellate counsel should have raised ineffective-assistance-of-counsel claims in his direct appeal, such an argument lacks merit. *See Gibbons v. State*, 97 Nev. 520, 523, 634 P.2d 1214, 1216 (1981) (concluding "that the more appropriate vehicle for presenting a claim of ineffective assistance of counsel is through post-conviction relief"); *Corbin v. State*, 111 Nev. 378, 381, 892 P.2d 580, 582 (1995) (explaining that the Nevada Supreme Court "has consistently concluded that it will not entertain claims of ineffective assistance of counsel on direct appeal"). Furthermore, regarding any argument that Brass's appellate counsel was ineffective for failing to raise any of the substantive claims that underlaid his ineffective-assistance-of-trial-counsel claims, the Nevada Supreme Court reasonably determined that Brass failed to demonstrate deficiency on the part of his appellate counsel. *Strickland*, 466 U.S. at 688. None of the underlying claims presented in Ground 6 had any merit, *see* Ground 6 *supra*, so Brass fails to demonstrate "that, but for his [appellate]

38

counsel's" alleged deficiencies, he "would have prevailed on his appeal." *Smith*, 528 U.S. at 285. Because the Nevada Supreme Court reasonably denied this claim, Brass is denied federal habeas relief for Ground 7(b).

### 3.     Subpart c

In Ground 7(c), Brass alleges that his appellate counsel failed to argue that the state district court erred in granting his motion to withdraw his guilty plea. ECF No. 24 at 40. In Brass's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the district court erred when it granted appellant's presentence motion to withdraw his guilty plea. Appellant failed to demonstrate deficiency or prejudice. The district court may grant a motion to withdraw a guilty plea "for any 'substantial reason' if it is 'fair and just,'" and this court reviews that decision for an abuse of discretion. *Woods v. State*, 114 Nev. 468, 475, 958 P.2d 91, 95 (1998) (quoting *State v. Second Judicial Dist. Court*, 85 Nev. 381, 385, 455 P.2d 923, 926 (1969). Appellant failed to demonstrate that the district court abuse its discretion in granting appellant's motion to withdraw and, thus, that his claim would have had a reasonable probability of success on appeal. We therefore conclude that the district court did not err in denying this claim. [Footnote 2: To the extent appellant claimed that the district court erred in granting the motion to withdraw guilty plea, appellant's claim could have been raised on direct appeal and was thus procedurally barred absent a demonstration of good cause and actual prejudice. NRS 34.810(1)(b)(2). For the reasons discussed above, appellant's claim of ineffective assistance of appellate counsel did not demonstrate good cause or actual prejudice.].

ECF No. 40-2 at 6-7. The Nevada Supreme Court's rejection of Brass's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

On April 2, 2008, Brass pleaded guilty to two counts of robbery with the use of a deadly weapon. ECF No. 29-4 at 7; *see also* ECF No. 29-1 (signed guilty plea agreement). In response to the state district court's questioning, Brass indicated that he believed it was in his best interest to take the plea deal rather than "to go to trial and risk getting convicted of murder and attempted

murder." *Id.* at 8. The state district court found Brass's "plea of guilt [was] freely and voluntarily given," and that Brass "underst[ood] the nature of the offense and consequences of the plea." *Id.* at 14.

On June 6, 2008, Brass's trial counsel filed a motion to withdraw Brass's guilty plea. ECF No. 29-6. Brass's trial counsel explained that Brass "allege[d] his factual innocence in this matter" and that "the Court's comments immediately prior to the entry of [his] plea unduly coerced him to enter into these negotiations." *Id.* at 3. The State opposed the motion. ECF No. 30. A hearing was held on June 16, 2008, in which the state district court granted the motion. ECF No. 30-1 at 2. The state district court indicated,

> Mr. Brass, I believe, simply has buyer's remorse. He knew exactly what he was pleading to. However, sometimes people who make their own bed should then sleep in the bed that they make. And I think that Mr. Brass, who has not been sentenced, should have the benefit of going to trial. And, Mr. Brass, should you be convicted, I don't want you crying to me. I don't want you crying to me if you get convicted of murder that you could have had 12 years. Oh, Judge, oh, Judge, I don't want to go to prison for life because I could have had 12 years. You have to understand that. You're making the decision. It's your decision. Nobody else can make that decision for you, but at the end of the line if you get convicted, I don't want you crying to me.

ECF No. 89-2 at 6. Brass's trial counsel explained that he met with Brass "informing him of the good points and bad points about withdrawing his plea," including "discuss[ing] the potential sentencing range if he is ultimately found guilt." *Id.* at 6-7. Brass's trial counsel informed the state district court that "Brass still . . . want[ed] to go forward with th[e] motion." *Id.* at 7.

A post-conviction evidentiary hearing was held four years later. *See* ECF No. 39. Brass testified at that hearing that he entered his guilty plea knowingly, voluntarily, and intelligently. *Id.* at 33-34. However, Brass did not understand the grounds necessary to later withdraw his guilty plea. *Id.* at 34. In response to cross-examination by the State, Brass indicated that he

1  probably learned of his co-defendants' sentences after pleading guilty but before he withdrew

2  his guilty plea. *Id.* at 36.

3          Brass's original counsel, who represented him during the plea process, testified at the

4  post-conviction evidentiary hearing that "there were several meetings [that he] had with Mr.

5  Brass prior to his entry of the plea and then subsequent to his entry of the plea." *Id.* at 23.

6  Brass's trial counsel elaborated that he "was pleased when [Brass accepted the plea], since it

7  did limit his exposures and since the plea implicated both the murder case in which [Brass's

8  trial counsel] represented him and then an unrelated murder." *Id.* at 27. Brass's counsel had "no

9  reason to think [Brass's guilty plea] was not" legally entered; however, he later filed a motion

10  to withdraw the guilty plea. *Id.* at 25-26. Brass's counsel explained that Brass filed "a Pro Per

11  motion" to withdraw his guilty plea and that the state district court "requested that [he] file a

12  brief on [Brass's] behalf regarding that particular issue." *Id.* at 24. Brass's counsel testified that

13  it was Brass's desire to have his guilty plea withdrawn. *Id.* at 29.

14          Brass's second counsel, who represented him during the trial and the appeal, testified

15  that he was surprised that the state district court "let [Brass] withdraw [his guilty] plea under

16  th[e] circumstances." *Id.* at 15. He also testified about not raising an issue about the state

17  district court's granting of the motion in Brass's direct appeal:

18          The only thing I can think of is that I would've thought it would be better for post-
           conviction relief, because I didn't have the record necessarily as to why, you know,
19          as to why it would've been done. But other than that, I don't know why, 'cause as
           I sit here now, perhaps we would've had the record well enough, but I just didn't
20          think the Supreme Court would be interested in that issue.

21  *Id.*

22          The Nevada Supreme Court reasonably determined that Brass failed to demonstrate that

23  his appellate counsel was deficient. *Strickland*, 466 U.S. at 688. Pursuant to Nevada law, "[a]

41

1   district court may, in its discretion, grant a defendant's motion to withdraw a guilty plea for any

2   substantial reason if it is fair and just." *Wood v. State*, 114 Nev. 468, 475, 958 P.2d 91, 95

3   (1998) (internal quotation marks omitted). Because the state district court had discretion to

4   grant Brass's motion to withdraw his guilty plea, Brass's appellate counsel's statement that he

5   "just didn't think the Supreme Court would be interested in th[e] issue," ECF No. 39 at 15,

6   appears to be accurate. Indeed, demonstrating an abuse of discretion is difficult, and in this

7   situation, it is somewhat nonsensical to argue that a request should be granted and then later

8   argue that the request was a mistake and should not have been granted. Accordingly, given the

9   discretionary nature of the underlying claim, Brass fails to demonstrate that his appellate

10  "counsel unreasonably failed to discover [this] nonfrivolous issue[ ]." *Smith*, 528 U.S. at 285;

11  *see also Jones v. Barnes*, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue

12  runs the risk of burying good arguments."). Because the Nevada Supreme Court reasonably

13  denied this claim, Brass is denied federal habeas relief for Ground 7(c).

14  **H.      Ground 8**

15          In Ground 8, Brass alleges that his federal constitutional rights were violated when his

16  trial counsel erroneously allowed him to withdraw his guilty plea. ECF No. 24 at 41. Brass

17  raised this claim in his second state habeas petition. *See* ECF No. 73-1 at 20. The Nevada

18  Supreme Court determined that Brass's second state habeas petition was procedurally barred as

19  untimely and successive. ECF No. 73-5. Thus, this court previously determined that "in order

20  for [Brass] to proceed on his claim in Ground Eight, he must show cause and prejudice for the

21  default." ECF No. 84 at 10. Brass argued that he can establish cause based on *Martinez v. Ryan*,

22  566 U.S. 1 (2012) because his post-conviction counsel rendered ineffective assistance by

23  failing to raise this claim in his initial state court habeas proceedings. *Id.*

42

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also McCleskey v. Zant*, 499 U.S. 467, 497 (1991) ("For cause to exist, the external impediment . . . must have prevented [the] petitioner from raising the claim."); *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) ("To establish prejudice resulting from a procedural default, a habeas petitioner bears 'the burden of showing not merely that the errors [complained of] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." (emphases in original), citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). In *Martinez*, the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause to overcome the procedural default of a claim of ineffective assistance of trial counsel. 566 U.S. 1 (2012). In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Id.* at 1319. The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: [i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The Court described "initial- review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance of trial." *Id.* Because the *Martinez* analysis is intertwined with the underlying merits of this ground, this court deferred ruling on this issue until the merits of this ground were briefed by the parties. ECF No. 84 at 10.

The *Strickland* "two-part standard" identified in Ground 6 "appli[es] to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As

1   was detailed in Ground 7(c), Brass's trial counsel explained that he met with Brass several

2   times before Brass withdrew his guilty plea in order to discuss the consequences of doing so,

3   including discussing the potential sentence Brass may face if he were to be found guilty by the

4   jury. ECF No. 39 at 23; ECF No. 89-2 at 6-7. Even after these discussions, Brass decided to

5   still go forward with the motion. ECF No. 89-2 at 7. Additionally, Brass was the one who

6   originally moved in proper person to withdraw his plea. ECF No. 39 at 24. Brass's trial counsel

7   only thereafter filed a brief on Brass's behalf at the request of the state district court. *Id.* Based

8   on these facts, it cannot be concluded that Brass's trial counsel was deficient. *Strickland*, 466

9   U.S. at 688; *Hill*, 474 U.S. at 57. In fact, contrary to Brass's assertions, the evidence

10  demonstrates that Brass's trial counsel did not want Brass to withdraw his guilty plea. Rather,

11  Brass's trial counsel was pleased with Brass's plea deal, *see* ECF No. 39 at 27, and after Brass

12  moved for the withdrawal of his plea, Brass's trial counsel discussed the consequences of this

13  decision with Brass on several occasions. Accordingly, it was Brass's idea and decision to

14  withdraw his guilty plea, not his trial counsel's. This conclusion is supported by the fact that

15  the state district court even told Brass that withdrawing his plea was his decision and warned

16  him that he if was found guilty, he would face a substantially greater sentence. ECF No. 89-2 at

17  6.

18      Because Brass has not shown that his trial counsel was deficient, Ground 8 is not

19  substantial. Therefore, Brass has not shown that his post-conviction counsel was ineffective for

20  failing to raise this ground. And because Brass's post-conviction counsel was not ineffective,

21

22

23

1  there is no cause for Brass's procedural default. *See Martinez*, 566 U.S. at 9. Thus, Ground 8

2  will be denied because it is procedurally defaulted.[1]

3  **I.      Ground 10**

4         In Ground 10, Brass alleges that he is entitled to relief because of the cumulative effect of

5  the errors raised in his petition. ECF No. 24 at 45. In Brass's appeal of the denial of his state

6  habeas petition, the Nevada Supreme Court held: "appellant claimed that cumulative error

7  warranted reversal of his conviction. As appellant failed to demonstrate any error, he failed to

8  demonstrate any cumulative effect of error would amount to ineffective assistance of counsel."

9  ECF No. 40-2 at 5. This ruling was reasonable.

10        Under Ninth Circuit precedent, "although individual errors may not rise to the level of a

11  constitutional violation, a collection of errors might violate a defendant's constitutional rights."

12  *Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004). "[C]umulative error warrants habeas

13  relief only where the errors have 'so infected the trial with unfairness as to make the resulting

14  conviction a denial of due process.'" *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007)

15  (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here, Brass failed to identify

16  any errors. Thus, Brass is denied federal habeas relief for Ground 10.[2]

17

---

18    [1] Brass also argued that he can demonstrate cause for his procedural default because this
claim was not available until after he filed his first state habeas petition due to the fact that it was
19  based on subsequent United States Supreme Court decisions, *Lafler v. Cooper*, 566 U.S. 156
(2012) and *Missouri v. Frye*, 566 U.S. 134 (2012), which established the right to counsel during
20  plea negotiations. ECF No. 78 at 12. This argument lacks merit. The United States Supreme
Court determined that a defendant has the right to counsel during the plea process in 1985. *See*
21  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Further, Brass's contention deals with the withdrawal
of his guilty plea, not plea negotiations specifically.

22    [2] Brass requested that this court "[c]onduct a hearing so proof may be offered to support
the allegations in [his] Amended Petition" and grant him "the authority to obtain subpoenas for
23  witnesses and documents, conduct depositions, and conduct any other discovery reasonably
necessary to prove the facts alleged in [his] petition." ECF No. 24 at 46. Brass fails to explain
what evidence would be presented at an evidentiary hearing or through discovery. Additionally,

1 | ///

2 | ///

3 | **Certificate of Appealability**

4        This is a final order adverse to Brass. As such, Rule 11 of the Rules Governing Section

5 | 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Therefore,

6 | this court has *sua sponte* evaluated the claims within the petition for suitability for the issuance

7 | of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

8 | Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a

9 | substantial showing of the denial of a constitutional right." With respect to claims rejected on the

10 | merits, a petitioner "must demonstrate that reasonable jurists would find the district court's

11 | assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473,

12 | 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a

13 | COA will issue only if reasonable jurists could debate (1) whether the petition states a valid

14 | claim of the denial of a constitutional right and (2) whether the court's procedural ruling was

15 | correct. *Id*. Applying these standards, this court finds that a certificate of appealability is

16 | unwarranted.

17 | **Conclusion**

18        IT IS HEREBY ORDERED that the First Amended Petition for Writ of Habeas Corpus

19 | by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (ECF No. 24) is DENIED.

20        IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

21 | _____

22 | this court has already determined that Brass is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing or through

23 | discovery would affect this court's reasons for denying relief. Accordingly, Brass's request for an evidentiary hearing is denied.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

Dated:  May 1, 2020

_____
Gloria M. Navarro, Judge
United States District Court